**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 28 | P 3: 52

LORETTA G. WHYTE
CLERK

IN RE:  PROPULSID
      PRODUCTS LIABILITY LITIGATION

MDL NO. 1355

SECTION "L"

JUDGE FALLON

**THIS DOCUMENT RELATES TO ALL CASES:**

### ORDER AND REASONS

Before the Court is the Emergency Motion of the Plaintiffs' Steering Committee for Distribution of Attorney's Fees. The matter came before the Court with oral argument on November 22, 2005, at 1:00 p.m. For the following reasons, the Motion is hereby GRANTED. Funds will be distributed according to the schedule set forth below.

## I.    Factual and Procedural Background

This multidistrict litigation arose from a series of lawsuits filed around the country by plaintiffs who alleged actual and potential risks associated with their consumption of a medication known as Propulsid. Defendants Janssen Pharmaceutica, Inc. and Johnson & Johnson manufactured and distributed Propulsid to treat nocturnal heartburn in adults with gastroesophageal reflux disease (or "GERD"). Plaintiffs contended that Propulsid caused various personal injuries and heart problems, including cardiac arrhythmia, ventricular tachycardia, ventricular fibrillation, torsades de pointes, and QT prolongation. Janssen Pharmaceutica removed Propulsid from the United States market in 2000 after an FDA report suggested a link between the drug's use and heart rhythm abnormalities.

In August 2000, the Judicial Panel on Multidistrict Litigation assigned this multidistrict

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

proceeding to this Court.  After several years of pretrial discovery and the trials of several

individual cases, the parties in February 2004 reached an agreement that will resolve the

remaining federal cases.  The MDL Mediation and Resolution Program has been operational

since 2004 and has begun to distribute funds to claimants.

As an outgrowth of the settlement program, on May 27, 2005, this Court approved an

agreement negotiated by the parties for an award of $22,500,000.00 for payment of Plaintiffs'

attorneys' fees and reimbursement of costs.  The Court held that this amount fairly compensated

the attorneys for their labors in the case, and the Court directed that the sum be deposited in

escrow.  The Court further ordered that costs would be reimbursed from this fund first, and that

attorney's fees would be disbursed later upon approval of the Court, after a formal hearing at

which all interested parties would be afforded an opportunity to present evidence or oral

argument.

On October 3, 2005, the Plaintiffs' Steering Committee filed the present Emergency

Motion for Partial Distribution of Attorneys' Fees and Costs, with full reservation of rights of all

attorneys who may claim any right to common fees and expense reimbursements from the

remainder of the funds.  The PSC filed the present motion in an effort to expedite the fee process,

given the financial constraints that many face after Hurricane Katrina.  The motion petitions the

Court for distribution of $15 million of the $22.5 million fund.

**a.      Method used to Determine Interim Distribution**

Plaintiffs' Liaison Counsel undertook a lengthy process to arrive at the proposed

distribution that was submitted to the Court.  The accounting firm of Wegmann-Dazet &

Company has been recording time expended and costs incurred by Plaintiffs' counsel since the outset of this MDL. The PLC initially requested the accounting firm's figures for all held costs, capital contributions, and reported hours as of January 1, 2005. The PLC determined that only those firms with substantial reported hours ("substantial" meaning more than 500 reported hours) would qualify for the emergency distribution. In addition, only firms reporting substantial hours prior to December 31, 2004 would be considered for emergency distribution. Firms reporting substantial hours were invited to attend a meeting held on October 11, 2005. This meeting was attended by every member of the Plaintiffs' Steering Committee and several members of the State Liaison Committee, and was recorded by a court reporter. A transcript was submitted to the Court for review during this motion hearing.

The PLC asked each firm to submit a report and request for fees, describing the nature of the lawyers' contributions to the Propulsid MDL. The PLC encouraged firms to submit detailed reports showing attendance at hearings and conferences, preparation of briefs and pretrial materials, work with experts retained by the MDL, and positions of leadership within the MDL. The firms could offer any objections to the proposed distribution in these reports, and all reports were submitted to the Court for review.

After the PLC held the meeting with firms reporting substantial hours, the PLC reviewed: 1) the figures from the accounting firm, 2) the reports from individual firms, and 3) sign-in sheets from the document depository and minutes of Plaintiffs' Steering Committee meetings, including assignments given at those meetings. The PLC also states that the proposed distribution takes into account the *Johnson* factors, in particular, the work foregone by attorneys in order to work on the Propulsid MDL, and the experience, skill, and efforts of the attorneys involved.

The PLC made the decision to credit each firm only with the hours reported by partners –

not associates, contract lawyers, paralegals, or other staff members. The PLC's position is that a

partner's hours demonstrate the level of commitment each firm had to this litigation and the level

of risk undertaken by the different firms. The PLC stated that this method was somewhat

inexact, and may have under-represented the efforts of certain firms which have limited

partnership opportunities. However, the PLC believes that, because this is a partial distribution,

any inequities can be cured in the final distribution.

Once the PLC arrived at a proposed distribution, the PLC submitted this distribution and

all backup documentation, including accounting records and reports of law firms, to Special

Master Patrick Juneau. The Special Master reviewed all documentation and met with the PLC to

clarify certain issues. After satisfying himself that the distribution was proper, the Special

Master formally recommended approval of the proposed distribution to the Court, and met with

the Court to discuss the distribution.

Finally, the PLC submitted the transcript of the October meeting of the Plaintiffs'

Steering Committee, all backup documentation, the reports of the law firms, and the proposed

distribution to the Court under seal. The Court has reviewed these materials. On November 22,

in open court, the Court heard oral argument from the PLC on the proposed distribution, and

provided the attorneys the opportunity to present objections. The Court is now prepared to rule

upon the Emergency Motion for Distribution of Attorneys' Fees.

**b.     Objections to the Proposed Distribution**

The Court heard four objections to the proposed distribution, from Richard Lockridge,

A.J. Rebennack, James Dugan, and Daniel Becnel. Each objection is discussed in turn.

Richard Lockridge stated that his firm reported over 2,500 hours expended on the Propulsid MDL. However, the proposed distribution only includes a $100,000 payment to his firm. Mr. Lockridge argued that the work done by his firm was all common-benefit work, in that his firm's personal cases in the MDL were minor. Mr. Lockridge asserted that much of the hours expended were by a senior partner at the firm who worked at the request of the Plaintiffs' Steering Committee. Mr. Lockridge requested a $400,000 interim distribution to his firm.

The PLC responded that the work undertaken by Mr. Lockridge's firm was at the request of a contract lawyer, not at the behest of the PSC. While Mr. Lockridge documented his firm's hours, the PLC suggested that, although the firm reported substantial time, the firm did not have a highly visible presence in this case. The PLC suggested that a more generous distribution to Mr. Lockridge may be appropriate at a later date.

A. J. Rebennack objected that his firm has been omitted from the interim distribution. Mr. Rebennack's firm reported 450 hours, and he stated that this work was all common benefit time. Mr. Rebennack's firm tried a case in which the Court ruled on a *Daubert* motion. Mr. Rebennack argued that the result of this *Daubert* motion was instructive to the MDL as a whole in that it spurred counsel into settlement. Thus, Mr. Rebennack argues that the work produced a common benefit.

The PLC responded by explaining that Mr. Rebennack's firm tried its case over the objection of the Plaintiffs' Steering Committee, which felt that no cases were ready for trial. The PLC argued that Mr. Rebennack's work was not common benefit work because it occurred in an

individual case.  The PLC stated that many firms tried individual cases in this matter, but none are being compensated from the MDL fund for that work.

James Dugan voiced an objection on behalf of the late Wendell Gauthier.  The Gauthier firm reported over 3,500 hours on the Propulsid MDL.  Mr. Dugan argued that the firm did everything that was asked of it, and that it deserves equal treatment with other members of the Plaintiffs' Steering Committee.  Mr. Dugan contended that this distribution should include a payment to them of approximately $550,000.

The PLC stated that Wendell Gauthier only reported 125 hours at the time of his death. Regarding the work of James Dugan, his health concerns made it impossible for him to complete the assignment given to him by the Plaintiffs' Steering Committee.  The PLC argued that only a small distribution to Mr. Dugan was appropriate at this time.

Daniel Becnel filed an opposition memorandum under seal to the proposed distribution. Mr. Becnel argued that his contribution to the Propulsid MDL was invaluable in the early stages of the litigation and remained significant throughout the course of the litigation.  Mr. Becnel represented that he filed the first Propulsid case, organized experts, held meetings, and spoke at conferences to publicize the problems with Propulsid.  Mr. Becnel further represented that he provided the first document depository in this case, and that many of his staff members were hired by the Plaintiffs' Steering Committee to administer this litigation.  Mr. Becnel further argued that he was a member of the Executive Committee, which rarely met, and that he wanted to be more involved as the case progressed. In addition, Mr. Becnel objected to the PLC's decision to only credit hours reported by partners, in that Mr. Becnel is the only partner in his

firm. Mr. Becnel also specifically detailed many beneficent acts which he performed for various members of his office and household staff.

The PLC responded that Mr. Becnel may be overstating his contributions to the MDL. The PLC argued that Mr. Becnel was compensated for the use of the document depository, and that the Plaintiffs' Steering Committee paid its own staff to do the work that Mr. Becnel represents was done by his firm. Regarding the Executive Committee, the PLC reported that the committee meetings were unnecessary because the PSC and members of the State Liaison Committee met bimonthly, and all issues were discussed in common. Further, the PLC reiterated his belief that only partner hours should be compensated from the attorneys' fee fund. The PLC emphasized that the proposed distribution is a partial distribution, and that firms may petition the Court for adjustment at a later date.

## II.     Partial Distribution of Attorneys' Fees

The emergency distribution proposed by Plaintiffs' Liaison Counsel appears to be fair and reasonable, at least for a first distribution. The PLC arrived at the proposed distribution by a thorough process in which attorneys who had performed substantial work could make their own reports to the Court and object to the PLC's findings. The distribution is primarily based upon figures reported to an independent certified public accountant who has worked with the MDL since its inception. Moreover, the distribution and all accompanying documentation has been extensively reviewed by the Special Master to the MDL and by this Court. In addition, the distribution proposed by the PLC generally confirms the Court's own knowledge of which attorneys have performed the substantial work in this litigation.

Most importantly, this is a partial, emergency distribution. Some $7.5 million remains in the attorneys' fee fund for later disbursement to attorneys and firms who feel they have been short-changed at this time. The Court recognizes the objections of those who spoke at the November 22 hearing. However, the Court agrees with the PLC's findings regarding the work done by each firm, as the PLC is in the best position to evaluate the various contributions of each attorney and firm to this litigation.

Accordingly, IT IS ORDERED that held costs of $1,515,215.98 and capital contributions of $1,005,394.63 shall be distributed from the attorneys' fee fund to Plaintiffs' counsel in accordance with the attached chart.

IT IS FURTHER ORDERED that an emergency distribution of the attorneys' fee fund shall be made to Plaintiffs' counsel as follows:

| | |
|---|---|
| Herman Mathis Casey Kitchens & Gerel, LLP | $4,200,000.00 |
| Levin, Fishbein, Sedran & Berman | $1,195,000.00 |
| Zimmerman Reed, PLLP | $1,000,000.00 |
| Seeger Weiss, LLP | $ 850,000.00 |
| Murray Law Firm | $ 850,000.00 |
| Ashcraft & Gerel | $ 700,000.00 |
| Domengaux, Wright, Roy & Edwards, LLC | $ 550,000.00 |
| Law Offices of Daniel Becnel, Jr. | $ 550,000.00 |
| Neblett, Beard & Arsenault | $ 500,000.00 |

| | |
|---|---|
| Hill, Toriseva & Williams, PLLC | $ 370,000.00 |
| Gauthier, Downing & Dean, APLC | $ 370,000.00 |
| Barrios, Kingsdorf & Casteix, LLP | $ 370,000.00 |
| Robinson, Calcagnie, Robinson | $ 275,000.00 |
| Lopez, Hodes, Restaino, Milman & Skikos | $ 100,000.00 |
| McKernan Law Firm | $ 100,000.00 |
| Lockridge Grindel | $ 100,000.00 |
| Cunard & Reiss | $ 100,000.00 |
| Capretz | $ 100,000.00 |
| Tina Nieves | $ 100,000.00 |
| **TOTAL** | **$12,380,000.00** |

New Orleans, Louisiana, this __23rd__ day of November, 2005.

UNITED STATES DISTRICT JUDGE

## PROPULSID HELD COSTS AND EXPENSES

| LAW FIRM | HELD COSTS AND EXPENSES |
|---|---|
| Barrios, Kingsdorf & Castex | 18,963.79 |
| Becnel | 3,919.44 |
| Bonsignore | 4,005.86 |
| Burg S, E, H & Jardina, PC | 1,998.16 |
| Caluda | 4,518.74 |
| Capretz & Associates | 38,576.59 |
| Cunard | 3,322.36 |
| Davis | 7,656.99 |
| Domengeaux | 52,484.91 |
| Dougherty | 6,969.18 |
| Fayard | 1,037.69 |
| Gancedo | 26,248.59 |
| Gauthier | 40,072.85 |
| Gilman and Pastor | 11,565.79 |
| Herman Mathis/Ashcraft & Gerel | 241,649.00 |
| Hill, Barry | 4,030.80 |
| Ieyoub & Wyble | 641.23 |
| Johnson | 6,289.68 |
| Lambert | 3,478.36 |
| LeBlanc | 4,754.75 |
| Levin-Fishbein | 232,784.10 |
| Levin Papantonio | 18,874.54 |
| Lockridge | 60,068.27 |

| LAW FIRM | HELD COSTS AND EXPENSES |
|---|---|
| Lopez | 36,256.40 |
| McKernan | 12,075.44 |
| Murray | 42,108.91 |
| Neblatt | 106,940.12 |
| Orlando & Kopelman | 3,989.98 |
| Parsons | 37,546.03 |
| Robinson & Cole | 109.92 |
| Robinson, Calcagnie | 128,925.69 |
| Seeger | 131,530.06 |
| Sessions, Fishman & Nathan | 0.00 |
| Slate Kennedy | 10,038.93 |
| Stipe | 3,937.59 |
| Williams Dailey | 35,486.07 |
| Youngdahl | 64,656.49 |
| Zimmerman | 107,703.48 |
| **TOTAL** | **1,515,215.98** |

# PROPULSID/MDL 1355
## Capital Contributions
### April 2000 through March 2005

| FIRM | UNREIMBURSED CONTRIBUTION |
|---|---|
| Baldwin | 5,211.82 |
| Barrios | 5,211.82 |
| Becnel | 43,812.77 |
| Climaco | 5,211.82 |
| Byrd | 5,211.82 |
| Caluda | 5,211.82 |
| Capretz | 5,211.82 |
| Climaco | 5,212.81 |
| Cunard | 5,211.82 |
| Davis | 5,211.82 |
| Domengeaux | 93,812.77 |
| Dumas | 5,211.82 |
| Gancedo | 5,211.82 |
| Gauthier | 93,812.77 |
| Gilman&Pastor | 5,211.82 |
| HermanMathis/Ashcroft & Gerel | 93,812.77 |
| Johnson | 5,211.82 |
| LeBlanc | 5,211.82 |
| Levin  Papanton | 93,812.77 |
| Levin Fishbein | 93,812.77 |
| Littlepage | 5,211.82 |
| Lockridge | 5,211.82 |
| Lopez | 13,029.55 |
| Mckernan | 13,029.55 |
| Murray | 93,812.77 |
| Neblett | 13,029.55 |
| Orlando & Kopelm | 5,211.82 |
| Parsons (Hill) | 5,211.82 |
| Robinson & Cole | 5,211.82 |

## PROPULSID/MDL 1355
## Capital Contributions
### April 2000 through March 2005

| FIRM | UNREIMBURSED CONTRIBUTION |
|---|---|
| Robinson,Calcagn | 26,059.10 |
| Seeger Weiss | 93,812.77 |
| Slate Kennnedy | 5,211.82 |
| Stipe Law Firm | 5,211.82 |
| Williams | 13,029.55 |
| Youngdahl | 5,211.82 |
| Zimmerman | 93,812.77 |
| TOTAL | 1,005,394.63 |